UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DAVID SCHICCHI,

               Petitioner,

         -against-

ROBERT ERCOLE, Superintendent,
Green Haven Correctional Facility,

               Respondent.
-----------------------------------------------------------X

MEMORANDUM
AND ORDER

06 CV 3273 (JG)

A P P E A R A N C E S :

    LAW OFFICES OF RICHARD LEVITT
        148 East 78th Street
        New York, NY 10021
    By:   Richard Levitt
        Attorney for Petitioner

    CHARLES J. HYNES
        Kings County District Attorney
        350 Jay Street
        Brooklyn, NY 11201-2908
    By:   Rhea Ann Grob
        Attorney for Respondent

JOHN GLEESON, United States District Judge:

        David Schicchi, a state prisoner, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction by a jury of murder in the second degree, in violation of N.Y. Penal Law § 125.25(1).[1] Schicchi has been sentenced to a prison term of 25 years to life. After reviewing the petition and respondent's opposition, I appointed counsel for

---

[1] That statute provides in relevant part that a person is guilty of second-degree murder if, "[w]ith intent to cause the death of another person, he causes the death of such person." N.Y. Penal Law §125.25(1).

Schicchi and directed further briefing. Oral argument took place on March 2, 2007. For the reasons set forth below, the petition is denied.

BACKGROUND

Schicchi stabbed his ex-girlfriend Jennifer Davids to death in his Brooklyn apartment early in the morning of July 7, 1999. Davids sustained seven stab wounds to the body and face, as well as multiple contusions and abrasions and an incised wound behind the ear. At trial, the prosecution established that a knife had caused many of the stab wounds, but that one wound -- through the jugular vein -- had been made with a pair of scissors. The defense did not contest these facts. Schicchi testified that he had, in fact, stabbed Davids with a knife and scissors. But he raised the affirmative defense that he had acted out of an extreme emotional disturbance, and that the most he could properly be convicted of was manslaughter. The jury rejected the affirmative defense and convicted Schicchi of intentional murder in the second degree.

Schicchi challenges two aspects of his trial: (1) the prosecution's introduction, on rebuttal, of the testimony of two of Schicchi's ex-girlfriends about uncharged crimes; and (2) various comments made by the prosecutor on cross-examination and in summation.

A.  *The Offense Conduct*

The evidence at trial established that Schicchi telephoned Davids at work on July 6, 1999. Schicchi, after being instructed by Davids's boss not to call there, showed up in person, threatening to kill himself and saying that he wanted Davids back. Davids promised to speak to him later. After he left, Schicchi telephoned two female friends, letting them know he would not be seeing them later because he would be with Davids. At 10:20 p.m., Schicchi called Davids's

2

father for the first time since Schicchi had moved out of the Davids's house more than two months earlier. Schicchi, in tears, asked to meet for coffee. Davids's father declined, but suggested meeting the next day. At approximately 11:30 p.m., Schicchi drove by the Davids's house, where Jennifer was speaking with a neighbor outside. She remarked to the neighbor, "Oh my God. What does he want? I wish he'd leave me alone. I hope he don't think you are somebody else." Tr. 180. Davids and Schicchi spoke privately. Davids reported to the neighbor that she had to give Schicchi "a shoulder to lean on" because he was threatening to hurt himself, and left in Schicchi's car just before midnight. Tr. 181-82.

Schicchi testified that he and Davids discussed the difficulties of their relationship in the car and at his house. He claimed that he was going to take her home after she said she could not "do this any more," but that when she discovered another woman's name and telephone number she called him a "son of a bitch" and took up a knife. Tr. 460. He testified that he knocked the knife out of her hand, causing an abrasion on his palm, and then "flipped out." *Id.* He took up the knife and stabbed her repeatedly. He then stabbed her in the neck with the scissors. Schicci testified: "I just see her with [the knife] and I just reacted towards that and I just completely flipped. . . . I just reacted towards her. I hit her, I grabbed the knife and I just remember stabbing her and I couldn't stop it. I just kept going." Tr. 463-64. Schicchi testified that he dragged the body into brighter light to see if Davids was alive, and grabbed sheets to stop the bleeding. He used a solution to begin cleaning up the blood. Detectives later found a large blood stain extending from the bedroom through the hallway to the body lying in the kitchen, and more blood on the floor and walls. Davids's body lay supine with the handle of a pair of scissors protruding from her neck.

3

At 12:30 or 1:00 a.m. on July 7, 1999, Schicchi telephoned his father and in an "uncharacteristic" voice asked him to "come quick and act casual." Tr. 221. His father found him on the corner, pacing. Schicchi asked that he not be angry. Inside there was a body on the floor, covered in a sheet. Schicchi's father did not recognize Davids at first when he felt for a pulse. Schicchi's father suggested they go to the police, to which Schicchi repeatedly responded that he wanted to kill himself and repeatedly asked his father to be casual. After stopping by a church and trying unsuccessfully to speak to a priest, Schicchi's father brought him to the police precinct, where Schicchi was arrested. Schicchi was treated for a fracture of his ring finger -- called a "boxer's fracture" because it is consistent with an injury sustained while delivering or blocking a punch -- and the abrasion on his palm.

B.  *Evidence of Prior Conduct Involving the Victim and Uncharged Crimes*

At a pre-trial hearing, the prosecution sought permission to introduce evidence, both in its case-in-chief and on cross-examination, of prior acts of the defendant involving Davids. The trial court permitted the introduction of evidence in the prosecution's case-in-chief that, *inter alia*, Schicchi had once struck Davids and pulled her hair; witnesses had occasionally seen Davids with bruises, a black eye, and a bleeding head injury; Schicchi had several times tried to prevent Davids from going out or speaking to friends on the telephone; and Schicchi repeatedly tried to make contact with Davids at her home and job even after the two had broken up. At the close of the prosecution's case, the court instructed the jury to consider the prior conduct involving Davids as proof of the "nature of the party's [*sic*] relationship," not as proof of Schicchi's "propensity" or "disposition" to commit the crime charged. Tr. 311-12.

4

The trial court also allowed the prosecution to cross-examine Schicchi about an incident ten years prior to the murder (when Schicchi was 16 years old), in which Schicchi struck his then-former girlfriend Melanie Ceglio repeatedly with an umbrella after she had slapped him. (Schicchi testified about this event on direct as well.) The trial court denied the prosecution's application to cross-examine Schicchi about whether he had raped Ceglio or struck her in the head at a phone booth, both on propensity grounds and because it concluded such evidence would be overly prejudicial. The trial court deferred ruling on the prosecution's application to rebut Schicchi's extreme emotional disturbance defense with testimony that Schicchi had raped Ceglio and had once threatened to rape another then-former girlfriend -- Melissa Walsh -- and to throw her off a bridge.

Once Schicchi raised the affirmative defense at trial, the court admitted the Ceglio and Walsh testimony, reasoning that "since the defendant has placed the state of mind at the time of the event at issue in order to convince the jury that he was suffering from extreme emotional disturbance . . . his past relationships become important in order for the jury to make this determination." Tr. 483. The court also allowed the proposed testimony because it impeached the testimony of the defendant's expert witness, who testified that Schicchi had suffered from an extreme emotional disturbance, and because the defendant had, on cross-examination, stated "that he didn't go after anyone that didn't want him." Tr. 484. The court found that the prejudicial effect of the challenged evidence was outweighed by its probative value.

Accordingly, over objection by defense counsel, the prosecution on rebuttal elicited testimony about Schicchi's rape of Ceglio after she began dating someone else, and his threatened rape and killing of Walsh after Walsh ended their relationship. In addition, the

5

prosecution elicited testimony from Walsh that Schicchi had been "possessive and controlling," becoming angry if she was with others when he called, criticizing her, and disapproving of her relationship with another man. Tr. 493. The prosecution also elicited testimony from Ceglio that Schicchi had damaged her house; that he once grabbed, pushed, and shoved her during an argument; that he once struck her repeatedly with the receiver of a pay phone when she refused to call a male friend so Schicchi could secretly listen in on the conversation; and that, when Ceglio once refused to speak with Schicchi because her father had forbidden her to, Schicchi had struck her repeatedly with an umbrella.

The trial court issued a limiting instruction to the jury regarding the testimony from Ceglio and Walsh. It told the jury not to take the evidence as proof of propensity, but solely as evidence bearing on "the issue of the defendant's intent." Tr. 535. During its general jury charge, too, the court instructed the jury that the testimony of Walsh and Ceglio, "insofar as it . . . bears on the issue of the defendant's intent . . . may be considered by you only for those limited purposes and for no other." Tr. 678.

C.   *The Cross-Examination of the Defense Expert Witness and the Prosecutor's Summation*

The petition challenges two sets of comments by the prosecution. The first set relates to Schicchi's expert witness, a forensic psychologist who opined that Schicchi had killed Davids in an extreme emotional disturbance, "a terribly, terribly overblown response to an argument or fight" that was "reflective" of Schicchi's "vulnerability and . . . emotional and psychological impairment." Tr. 356. While cross-examining the psychologist, the prosecutor referred to the extreme emotional disturbance defense as a "legal fiction." Tr. 375. The trial court sustained an objection to that remark. The prosecutor also elicited from the psychologist

6

an agreement that whether Schicchi was violent with Davids "or any other" would be significant. Tr. 377. (Schicchi had denied being violent with Davids in his interview with the psychologist.) Over the defense's objection, the prosecution questioned the psychologist about his knowledge of whether Schicchi had raped Walsh.

The second set of comments -- made during the prosecutor's summation -- relates to the evidence of Schicchi's past acts involving Walsh and Ceglio. The prosecutor explicitly referred to those acts to establish that the defendant intentionally killed Davids:

> David Schicchi is a man who, when he can't get what he wants from women, he throws violent tantrums. He becomes vengeful and wants to punish those women when they reject him. That rage, that need to punish Jennifer Davids is the reason why the defendant intentionally murder[ed] her, Jennifer.

Tr. 651. The prosecutor argued that Schicchi killed Davids not because of an extreme emotional disturbance, but as part of a "pattern" with his girlfriends in which defendant first appears "very nice," then gets "controlling," then uses "threats" and "violence,"[2] then threatens to kill himself to elicit sympathy when the girlfriend in question rejects him, then finally "take[s] what he wants" when he gets "enraged." Tr. 659-65.

The summation contains repeated references to the rape of Ceglio and the threat to rape Walsh. *See, e.g.*, Tr. 665 ("With Melanie [Ceglio] you saw it first. . . . [H]e took what he wanted. He took her body. There's nothing more punishing, there's nothing that shows more rage and anger than raping a woman, that's the ultimate control."); Tr. 661 ("Melissa, what, you are not going to get back with me? Well, I'm going to rape you, kill you, and throw you under a bridge."). The prosecution explicitly linked those incidents to the murder of Davids, arguing,

---

[2] The prosecutor explained that the relationship with Walsh lacked actual violence because "Melissa was a little bit stronger and she sounded like she wasn't taking any of that stuff." Tr. 661.

7

> [T]hat's a consistent pattern of how he treats his women. The consistent pattern in how when he gets rejected and reacts. That's why it was not unreasonable, in the defendant's mind, the way he acted. It was not unusual in the way the defendant acted when he murder[ed] Jen on July 6th because he acted that way before. The only difference is that intensity in which he did it. He raped Melanie, which is awful. . . . He raped her. And he just took it up a notch with Jen. . . . [I]t's gradual progression.

Tr. 667; *see also* Tr. 666 ("[S]imilar things happened with Jen [when] he was rejected."); *id.* ("I'm not going to tell you that if Melanie had fought back the defendant would have done the same thing."). Responding to the defense expert's statement linking extreme emotional disturbance to a "true loss of control," Tr. 556, the prosecutor stated, "[Y]ou can't physically assault someone, rape someone, threaten[] to kill someone and then when you finally do kill somebody, you say oh, I didn't know it was going to happen," Tr. 668. The summation ended with the request that the jury "make [Schicchi] take responsibility, finally, for his acts and come back with a verdict of Murder in the Second Degree." Tr. 669.

C. *Procedural History*

On appeal to the Appellate Division of the New York State Supreme Court, Second Department, Schicchi challenged his conviction on the grounds, *inter alia*, that the rebuttal testimony and prosecutor's summation deprived him of his constitutional right to a fair trial. The Appellate Division unanimously affirmed the conviction, holding that the rebuttal testimony "was admissible for the purpose of disproving [Schicchi's] claim that he was acting under the influence of extreme emotional disturbance when he stabbed his former girlfriend," and that "[a]ny potential for prejudice was far outweighed by the probative value of the evidence." *People v. Schicchi*, 787 N.Y.S.2d 338, 338 (2d Dep't 2004) (citations omitted). The

8

court decided that "[t]he defendant's remaining contentions either are unpreserved for appellate review or without merit." *Id.*

Leave to appeal to the New York Court of Appeals was denied. *People v. Schicchi*, 4 N.Y.3d 856 (2005).

Schicchi now petitions for a writ of habeas corpus, challenging his conviction on the grounds that the rebuttal testimony and prosecutor's remarks on cross-examination and on summation deprived him of his constitutional right to a fair trial.

DISCUSSION

A.  *The Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions when the state court has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[3] *Id.* § 2254(d)(1). The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001), *cert. denied*, 535 U.S. 1064 (2002).

---

[3] Habeas relief is also warranted where the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). That subsection is not relevant to Schicchi's challenge.

9

A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist*, 260 F.3d at 93 (quoting *Williams*, 529 U.S. at 411). Interpreting *Williams*, the Second Circuit has added that although "'[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

The Supreme Court has explained that the specificity with which the rule of law at issue is defined may affect whether the state court's determination was "unreasonable":

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow.

10

> Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

As stated above, this standard of review applies whenever the state court has adjudicated the federal claim on the merits. "For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to a judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B.   *The Rebuttal Testimony*

Schicchi argues that the state court's admission of the rebuttal testimony that Schicchi raped Ceglio and threatened to rape and kill Walsh violated his right to a fair trial under the Due Process Clause of the Fourteenth Amendment. Federal law protecting the right to a fair trial is, of course, clearly established, but erroneous evidentiary rulings by a state trial court generally do not rise to the level of due process violations upon which a federal court may issue a writ of habeas corpus. *See Jenkins v. Bara*, 663 F. Supp. 891, 899 (E.D.N.Y. 1987) (citing, *inter alia*, *Lipinski v. New York*, 557 F.2d 289, 292 (2d Cir. 1977)). The test for such a violation is difficult to pass: the admitted evidence must be "so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)). "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation," so the Supreme

11

Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." 493 U.S. at 352. "The erroneous admission of evidence rises to a deprivation of due process under the Fourteenth Amendment only if the evidence in question 'was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985). "Where the prejudicial evidence is 'probative of [an] essential element' in the case, its admission does not violate the defendant's right to due process." *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998), *cert. denied*, 525 U.S. 840 (1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 69 (1991)). Nor does federal error exist merely because the state court violated its own laws of evidence. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Recognizing the difficulty of establishing a due process violation with such a test, Schicchi essentially tries to lower the bar. He argues that the tradition disallowing "resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt," *Michelson v. United States*, 335 U.S. 469, 475 (1948), is itself clearly established federal law. While Supreme Court has repeatedly recognized such a tradition, however, it has never held that the admission of character evidence to prove the guilt of a defendant could violate the Due Process Clause of the Fourteenth Amendment. In fact, as Schicchi acknowledges, the Supreme Court in *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991), expressly declined to reach the issue "whether a state law could violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." *See also Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) ("There is no clearly established

Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."). Accordingly, the mere admission of prior bad acts by the trial court, even if offered for propensity purposes, is not, without more, sufficient to establish a constitutional violation that demands issuance of the writ.

The question to be asked on habeas review, rather, is whether the admission of the rebuttal testimony in Schicchi's case was so extremely unfair that it violated fundamental conceptions of justice. I conclude that it was not, and the state court was not unreasonable in concluding that it was not.

First, the testimony, while prejudicial, was nonetheless "probative of [an] essential element in the case." *Dunnigan*, 137 F.3d at 125 (internal quotation marks omitted). As the Appellate Division concluded, the Ceglio and Walsh testimony tended to disprove Schicchi's defense that his stabbing of Davids was actually influenced by an extreme emotional disturbance. *See People v. Roche*, 98 N.Y.2d 70, 76 (2002) (holding that elements of the extreme emotional disturbance affirmative defense include a subjective element, showing the action was "actually influenced" by an extreme emotional disturbance, and an objective element, showing that the extreme emotional disturbance was supported by a reasonable explanation). Schicchi testified at trial that when Davids attacked him he "flipped out" and lost control, stabbing Davids without the ability to stop. *See Zamora v. Phillips*, No. 04-CV-4093 (JFB), 2006 WL 2265079, at *6 (E.D.N.Y. Aug. 8, 2006) (citing *People v. Harris*, 95 N.Y.2d 316, 319 (2000)) ("The subjective element is associated with a loss of self-control."). By putting his capacity for self-control at issue, Schicchi opened the door for the Ceglio and Walsh testimony to address that capacity. *See People v. Cass*, 784 N.Y.S.2d 346, 350 (Sup. Ct. 2004) (evidence

13

of uncharged crimes admissible on rebuttal if it disproves a defendant's claim of extreme emotional disturbance). A jury could well conclude from Schicchi's familiarity with initiating extreme violence against women who reject him that his actions on the morning of July 7, 1999 were actually influenced not by a loss of self-control but rather by a conscious intent. Because the testimony could disprove an element of Schicchi's case, "its admission does not violate the defendant's right to due process." *Dunnigan*, 137 F.3d at 125.[4]

If the prior acts had been characterized at a higher level of generality than they were at trial, Schicchi's rape of Ceglio and threat to rape and kill Walsh might have been less probative of Schicchi's capacity for self-control. For example, had the prosecution elicited from Ceglio only the statement, "Schicchi raped me," and from Walsh only the statement, "Schicchi threatened to rape and kill me," it would be more difficult to discern how a jury could properly use that testimony to decide whether Schicchi lost control when he stabbed Davids; the jury would lack sufficient evidence to determine whether the past acts were similar to the crime at issue. *See People v. Santarelli*, 49 N.Y.2d 241, 251-52 (1980) (past acts of violence inadmissible to prove a defendant's "explosive personality," *i.e.*, his tendency to act "without adequate provocation," lacking evidence whether or not the violence was provoked). But here the prosecution made an effort to establish that Schicchi followed a detailed behavior pattern -- a gradual escalation of violence and control over the course of the relationship, followed by an initiation of or threat of extreme violence when he was rejected -- to link the past acts with the killing of Davids. The jury had before it several similar instances in which Schicchi resorted to violence when his girlfriend refused to do his bidding: for example, the beatings of Ceglio with

---

[4] As the trial court found, the evidence was also relevant because the defense expert's testimony had placed in issue Schicchi's violence against other women.

the umbrella and pay phone receiver, the rape of Ceglio after she began dating someone else, and the threat to rape and kill Walsh after she broke up with him. Given Schicchi's testimony that his stabbing of Davids was provoked by a similar rejection, a jury would be justified in using those past circumstances to conclude that Schicchi's reaction was not, subjectively speaking, an emotional aberration, but the result of a conscious decision.

Second, the rebuttal testimony, while prejudicial, was not so prejudicial as to be "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it," *Collins*, 755 F.2d at 19, because the jury had before it unchallenged, highly probative evidence supporting a conviction. *See Johnson*, 955 F.2d at 181 (finding no due process violation under *Collins* when, "apart from the challenged evidence identifying the clothing, the prosecution presented highly probative evidence of [the defendant]'s guilt"); *Collins*, 755 F.2d at 19 (no due process violation in part because "[t]he properly admitted evidence against Collins was very strong"). For example, Schicchi's telephone call to Davids's father, during which he wept and asked to meet, indicated that Schicchi was preparing himself to murder Davids. And Schicchi's efforts to wrap Davids's body in a sheet, and his attempt to use cleaning solution to clean up the blood, indicated that Schicchi was in control of his actions and understood their consequences at the time of the murder. Furthermore, the location of some of the stab wounds -- on the victim's face and jugular vein -- strongly support the conclusion that they were inflicted with the intent to kill. Last, but far from least, that Schicchi dropped the knife after inflicting six stab wounds, only to take up a different

weapon to deliver the final blow to the jugular, reflects that Schicchi had time to stop and consider his actions, only to decide after doing so to stab Davids again.[5]

To be sure, much of the rebuttal testimony was prejudicial. None of the past acts were identical to the offense conduct charged -- a rape, much less a threat, is not the same thing as a homicide executed with a knife and scissors.[6] But because the acts were probative of Schicchi's self-control, and because there was highly probative unchallenged evidence from which the jury could have convicted Schicchi, the admission of the rebuttal testimony did not deprive Schicchi of his right to a fair trial under clearly established federal law. At the very least, the state court was not unreasonable in so concluding.

C.     *The Prosecutor's Remarks*

Schicchi challenges certain remarks by the prosecutor on cross-examination and during summation, arguing that they were so prejudicial as to deprive him of a fair trial. Prosecutor's remarks are only constitutionally prejudicial in the "rare case." *United States v. Rodriguez*, 968 F.2d 130, 142 (2d Cir. 1992), *cert. denied*, 506 U.S. 847 (1992), *and cert. denied*, 506 U.S. 1023 (1992). The three-part test in the Second Circuit examines "(1) the severity of any misconduct, (2) the measures taken to cure the misstatements, and (3) their likely effect on the outcome." *United States v. Forlorma*, 94 F.3d 91, 95 (2d Cir. 1996).

---

[5] That the court issued limiting instructions further militates against a finding of fundamental unfairness. *See Dowling*, 452 U.S. at 353. Schicchi argues that the instruction limiting the rebuttal testimony to "the issue of the defendant's intent" was "completely erroneous" because an extreme emotional disturbance defense "does not negate intent." Memorandum of Law in Support of Petition Pursuant to 28 U.S.C. § 2254 for a Writ of Habeas Corpus 30 (citing *People v. Kohl*, 72 N.Y.2d 191, 196 (1988)). As I conclude on independent grounds that the testimony's admission did not create a constitutional defect in Schicchi's trial, I decline to address this argument.

[6] Furthermore, as counsel took pains to point out at oral argument, the incidents involving Ceglio occurred when Schicchi was between 15 and 16 years old.

While cross-examining Schicchi's defense expert, the prosecutor referred to the extreme emotional disturbance defense as a "legal fiction." Tr. 375. An objection to this remark was sustained, and rightly so. The remark derogated a defense Schicchi was entitled to raise as a matter of New York law. *See* N.Y. Penal Law § 125.25(1) (providing that "it is an affirmative defense" to murder in the second degree that "[t]he defendant acted under the influence of an extreme emotional disturbance for which there was a reasonable explanation or excuse . . . ."). It was misconduct to suggest that Schicchi's resort to such a defense was an appeal to "fiction," because such a suggestion mischaracterizes the law. But given that defense counsel's objection to the remark was sustained, I cannot conclude that this error infected the whole trial with prejudice. The prosecutor also questioned Schicci's expert about his knowledge of whether Schicchi had raped Walsh. This was not prejudicial. It was relevant for impeachment: the witness had conceded that whether Schicchi was violent with Davids "or any other" impacted his evaluation of Schicchi. Tr. 377. Accordingly, the remarks by the prosecutor on cross-examination do not appear to me to have prejudiced the trial, and the Appellate Division was not unreasonable in concluding likewise.

Schicchi argues that the prosecutor's repeated references in summation to rape -- the rape of Ceglio and the threat to rape and murder Walsh -- deprived him of a fair trial. The detailed discussion of Schicchi's abuse of other women indeed carried a risk of prejudicing the jury. And it did not help matters when, after a lengthy discussion of those past acts, the prosecution exhorted the jury to "make [Schicchi] take responsibility, finally, for his acts and come back with a verdict of murder in the Second Degree." Tr. 669. But, for the reasons discussed above, the introduction of the evidence of those past crimes was not improper. And

17

the prosecutor was entitled to comment upon that evidence in order to argue that there was a link between the past acts and Schicchi's claimed lack of self-control in killing Davids. *See, e.g.*, Tr. 667 ("It was not unusual in the way the defendant acted when he murder[ed] Jen on July 6th because he acted that way before."); Tr. 666 ([S]imilar things happened with Jen [when] he was rejected.").

Finally, as discussed above, there was strong evidence of Schicchi's guilt presented at trial. That evidence rendered the improper remarks by the prosecutor harmless. *See United States v. Modica*, 663 F.2d 1173, 1182 (2d Cir. 1981). This reason alone would lead me to decide that the Appellate Division was not unreasonable in concluding that Schicchi's challenge to the remarks was without merit.

## CONCLUSION

For the reasons set forth above, the petition is denied. Because Schicchi has failed to make a substantial showing that he was deprived of a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
March 18, 2007